Good morning. I may please the Court. David Bradford on behalf of Manufactured Home Communities Financing Limited. Your Honor, since 1998, through clearly established participation in an association, and then in its own name, MHC has sought a day in court on the merits of its federal constitutional claims against a very unprecedented rent control ordinance. This ordinance has been found by the State Court to deny access to a discretionary rent increase. The State Court also found that one of the laws was null and void and never should have been enforced in the first place. The City has enforced a series of three different laws with respect to the same period of time, taking inconsistent positions as to which of those laws was applicable during the very same period between 1998 and 2001. In connection with summary judgment, MHC submitted an affidavit, an expert report, and deposition testimony from one of the country's, in fact, the world's leading authority on affordable housing, Dr. Quigley, at the University of California at Berkeley. Dr. Quigley established that this ordinance actually makes housing less affordable and accessible because tenants are permitted to sell the benefits of the rent control to successor tenants. Kennedy. But what does that have to do with the procedural deficiencies that you may make an excellent argument to a legislative body, but with regard to the procedural deficiencies that the trial judge found here? We need to deal with those, don't we, as opposed to the whether or not this makes a good policy? Well, certainly. Let me turn to the procedural defenses that denied us our day in court on the merits, but I do want to make clear that the facts of this case state a compelling claim under both substantive due process and under a pen-sensual taking analysis  At the time, those substantive due process claims are made available because of the decision in lingo, and the pen-sensual claim is first available because of the decision in lingo. The procedural grounds on which the district court refused to consider the claims related to the 01 case were statute of limitations and exhaustion. There is no doubt that MHC sued in its own name within one year of the enactment of Ordinance 412. That was the ordinance enacted in 2001. The district court held that that ordinance was substantially similar to the 1998 ordinance, which is known as Ordinance 381, and therefore, suit should have been brought back in 1998 when a substantially similar law was enacted. Were there any significant differences between the vacancy control provision in the earlier law and the vacancy control provision in 412? I know that there were differences in terms of the formulaic approach, but with regard to the pertinent question here in the vacancy control, were there any real changes? Only in the effect of the vacancy control, the literal provisions may have been the same, but the predecessor law was held to be void. So there was no law that MHC could have sued against because the State appellate court, after the district court reached its decision, the State appellate court upheld the finding that the predecessor law, 381, was never properly enacted. It was simply never the law. So for us to have failed to sue against an ordinance that was never an ordinance, that was never a law, certainly should not bar a claim that was made within a year of the first validly enacted law. And so the State appellate court's decision that 381 was void, of no effect, and was never properly enacted, should eliminate that as a grounds for treating 1998 as a starting point. But what about 324 and 329? Don't they have essentially the same vacancy control provision as well? But that's one small piece of the effect of the ordinance for an as-applied claim. The CPI provisions of those two ordinances are so dramatically different that to take an example, if the CPI permitted a 10 percent increase just to make the math easy, under the old predecessor ordinance, the full $10 would be added to the rent each year. Under the modified ordinance, less than half that amount, 4.9 percent, would be available, because only the first 3 percent is subject to a 70 percent increase. Everything else is 40 percent. And when you compound that, what happens is you get an exponentially expanding gap between the market rent on the one hand, and the permitted rent on the other. And that will grow in perpetuity and for all time. And when you then add to that the notion that there can be no adjustment when somebody moves out, the effect of the vacancy control is so much more profound and devastating when you have this exponential gap between the permitted rent and the market rent, that the effects of vacancy control become much more severe with respect to the new law. We also adduced evidence that during the period that the predecessor ordinance was in effect, roughly 1994 to 1998, there was a recession that was admitted to in deposition by the city's experts. Therefore, there was no practical difference between the CPI permitted rents and the rent control rents. So from an as-applied standpoint, the first time that there really was an injury from the application of any of these laws occurred during the period of time that suit was bought. Furthermore, MHC did participate in the bringing of suit by the association. The statements of undisputed fact specifically admit the city's undisputed fact in paragraph 25ER55, that the city's undisputed fact admitted that MHC was part of the association in 1998 when it brought its suit. There was no suit between 1994 and 1998 because a settlement agreement had been reached. The settlement was that the CPI would remain 100 percent, that there would be no legal proceedings unless that changed. In 1998, the initiative effort came forward to change the CPI provisions from the agreed-upon settlement amounts of 100 percent to reduce it so that it could be even less than 50 percent. Immediately, all the park owners through an association brought a suit. They also alleged that law was never validly adopted, and they were right. So there really was no new law at that point. The first time we had a new law was when 412 was put on the books in early 2001, and there is no dispute that there was a timely suit as to 412, now deemed to be the only valid ordinance that could have been sued upon. With respect to the original exhaustion issue, that, first of all, does not apply to the substantive due process claim, and because exhaustion applies only to takings. And this is where Lingle becomes very important, because, as Your Honors know, in the Ninth Circuit, litigants were prohibited from bringing a substantive due process claim if you could bring a taking claim. Armendariz held that, and Sinclair held that. Lingle specifically said that a substantive due process claim goes to the validity of the law, and it is, in the words of Lingle, logically distinct from and prior to a taking claim, because if a law violates substantive due process, in the words of Lingle, no amount of compensation can justify it. Only if it passes the substantive due process test, and it's a valid law that is not to be enjoined, then you get to the party entitled to compensation for that law because it affects a taking. But you can't get to the taking claim until you've decided the substantive due process claim. So that Lingle made clear that a substantive due process claim is distinct and separate from, and thus, of course, should be available to litigants, even where a taking claim may also then be available if the substantive due process claim fails. So this was the first time that MHC could bring the substantive due process claim. The district court did not have the benefit of that analysis, and the substantive due process claim is not subject to exhaustion because the remedy is not just compensation. The exhaustion is to go seek just compensation. The reason that exhaustion does not apply to the takings claim is because the means for exhausting under California law is to first go seek a discretionary rent increase. And if you don't do that, the rest of the remedies are not available to you. We have a binding state court decision, binding by way of collateral estoppel, again, which was not final or considered by the district court, which held that MHC was unconstitutionally chilled from seeking a discretionary rent increase from 1998 to the time in 2005 when the state appellate court said those unconstitutional provisions should be severed. So at the time that we filed this action and pursued this action, which is the relevant time for exhaustion purposes, there was no available state court process to seek a state court discretionary rent increase or just compensation through the rent increase process. That's been adjudicated by the state court. The third and final procedural grounds was a ground of mootness, and that was because at the time of the decision below, both 381 and 412 had been held void, and the district court therefore said it's moot. Now, 412 has been upheld as a retroactive law back to the date that 381 was purportedly the law. And as to each of these laws, they state a very quintessential, pensential claim as well as a substantive due process claim, and at minimum, we should have a day in court on the merits of those claims. We couldn't have had that substantive due process claim available before Lingle. Twice before, the Court of this Court and the Supreme Court addressed circumstances where there was a shift or correction of course in a taking claim while the case was on appeal. This happened in the Yee v. Escondido case. It happened in the Laval case. In both of those cases, the Ninth Circuit had held that mobile home rent control gave rise to a physical taking. When that went up to the Supreme Court in Yee, and the Supreme Court said it's not a physical taking, it may well be a regulatory taking, the Court indicated that it would hear the regulatory taking claim, even though it was never argued below, because the litigants relied upon what was then the appropriate framework of analysis, which was the physical taking analysis. Similarly, here, we have advanced what was the law in this circuit under Cashman v. Petotti, which was that if an ordinance failed to substantially advance a legitimate purpose, it affected taking. The decision in Lingle has made clear that the more appropriate standard is the Penn Central standard. We have pled facts which on their face would not even require an amendment to satisfy the Penn Central standard. The essence of Penn Central is, does this law single out a particular property owner to bear a burden which, in fairness, should be borne by the community as a whole? Other courts have held that the problem of affordable housing is a community-wide problem. It's not a nuisance emanating from our particular property where there would be a reason to single out our property to bear the burden of solving that problem. So there is a disproportionate burden, which is a critical component of Penn Central. In addition, the burden is severe because we will never come close to achieving the market value of our property, and critically, the value of our property is being transferred from one tenant to the next. So your argument is that Lingle has freed you up to redirect your argument to a substantive due process claim. The impediment you face here, of course, is that you had a due process and an equal protection claim that the court has found is time-barred, and we really need to deal with that issue principally in order to free you up to go back to court and advance your due process. Certainly. And the key to the time bar is that the time bar was based upon the similarity between 412 and 381. The district court never found that there was a sufficient similarity between 412 and the ordinances that have different CPI provisions. It was based exclusively on the similarity between 412 and 381. I thought it was based on the vacancy control provision. No. I believe when you read that decision carefully, he says an argument could be made that those two are similar enough, but we don't reach that issue because I find there's sufficient similarity between 412 and 381. And, in fact, the standard for whether a new cause of action arises is whether the new ordinance is provisionally distinct and has a different effect. The only time that this doctrine of the law doesn't approve based on an amendment has been applied was when the ordinance was exactly the same. That was the case in the De Anza property case. All they did was extend the duration of the ordinance, but everything was exactly the same otherwise. So I think that it really would be a departure. Furthermore, the relevance of the prior law should be limited to a facial claim, because with respect to an as-applied claim, an as-applied claim is always available for injuries suffered within two years of the time that you brought the suit. That's the statute of limitation. The date of enactment doesn't control an as-applied claim. It's simply based on the application of a law. Otherwise, if litigants fail to sue based upon a law that was put in effect three years ago, and that law was unconstitutional, it implemented slavery, it did something wholly unconstitutional, it's not insulated from review in perpetuity, but you're limited to an as-applied claim. Our as-applied claim became ripe once the appellate court said there was no discretionary rent increase. So I don't believe that there's any statute of limitation barred to an as-applied taking claim. And as to the substance of due process claim, we couldn't have brought it any sooner than the law changed under Lingle. That's a further ground for considering that as a facial claim. And in all events, it was brought within one year of the only ordinance that was validly enacted, unless, of course, we go back to 324 — I'm sorry, 308, the early 1993 ordinances, which all the parties then agreed to. I would like to save a few minutes for rebuttal. Thank you very much. Mr. Bradford. Mr. Gilpin. Jim Gilpin on behalf of the city of Santee. I'd like to start first with the procedural issues, which I think this case is about. The Court did not address the substantive issues raised by Mr. Bradford here and in his brief. I would note for the Court that this Court, subsequent to the issuance of the Lingle case, did dismiss cases. In fact, the city of San Jose versus MHC, in that case, the challenges to this Ninth Circuit were based on ripeness and statute of limitations. In that opinion, this Court says, nonetheless, in light of Lingle, there is no substantive due process taking claim that can be presented. So there are grounds to dismiss it simply based on that merits, and this Court has done so in both the Spokley case and the city of San Jose. The underlying approach in the underlying case, the trial court took the approach outlined by the jurisprudence. Initially, it addressed the issue of ripeness. MHC, in its pleadings, had presented two claims, a facial claim and an as-applied claim. So the Court had to take two different tracks with respect to those two different theories. And with respect to the facial challenge, the Court correctly found, as the law was at that time, that it didn't have to address the ripeness issue, so it moved directly to the statute of limitations claim. Now, the statute of limitations, I think, is the crux of this. Everyone has conceded that it's a one-year statute of limitation from the enactment of the 1998. And then in 1998, you had 381, which was enacted. It was enforced up until 2001, when the city adopted 412 as a corrective ordinance, and as part of that ordinance specifically said that it applied retroactively. The court of appeal affirmed that on the state court level that it was permissible for the city to have done that. So you did have ordinances in place during the period of time of 381. Now, you look at 381. It was adopted and enacted in November of 1998. That's when their claim accrued. With respect to 1998, that means they needed to file a challenge to 381 within one year of enactment. Now, they claim, and it's undisputed, that they were a member of SPOA who did file an action challenging 381. It becomes important to look at the SPOA case and what happened procedurally there. Ultimately, in 2001, the district court entered a granted a 12B6 motion and dismissed their case. It then gave SPOA the opportunity to either appeal or file a new complaint by September of 2001. MHC has conceded that it withdrew or opted out of the association in August of 2001. Initially, there is no law on opting out of an association lawsuit. They've cited directly the class action cases, which are very distinct. There are procedures where a class designee files the lawsuits. There is then a period of time where class members can opt in or out of the case before there are substantive rulings. Here, you had a series of substantive rulings in that initial SPOA case. You had a motion for summary judgment that was granted in favor of SPOA and then reversed and a dismissal. SPOA then decides to appeal. If at that time MHC wanted to opt out and choose a different path, it needed to file a case by September of 2001. It did not do that. So SPOA, we came here to the Ninth Circuit. The case was reversed and remanded for further considerations. On remand of that case, a motion for summary judgment was granted. The briefing, the SPOA plaintiffs or appellants dismissed that court of appeal decision here that occurred in December of 2006. So then you have MHC, who files its state court action in October of 2001 and files the first action, in this case, challenging 412, in November of 2001. There are no, the footnotes are not there. There are no footnotes. The footnote in the district court's ruling on this notes that MHC didn't challenge 381 until it filed its second amended pleading in December of 2003. And I think this is critical. The court didn't deal with it because it felt it could deal with the statute anyway. But MHC made representations to the district court between November of 2001 and when it finally amended its pleading to include a cause against 381, that it wasn't challenging 381. So it conceded during that period of time that it was not challenging 381. Then in December of 2003, it amends its pleadings to, for the first time, include a claim against 381. Based on that, you have an elapse of the statute of limitations, even if you accept their tolling argument. I don't think the tolling should apply because it was an association action versus a class action. If it does apply, you kind of have a have-your-cake-and-eat-it-too situation where MHC is trying to avoid the res judicata effects of the SPOA decision, but at the same time take advantage of the tolling period, which leads to a situation where you can simply sit around and wait to see what happens. You don't like the result. You opt out and then file a lawsuit. And what about the challenge to 412? The 412 was filed within a year of the enactment of 412. The district court's finding on that dealt with De Anza. And 412 and 381, with respect to the vacancy control provisions, are identical. They are also identical with respect to the rent caps Mr. Bradford raised during his argument. 412 and 381 both had, I'd say some earlier, 70 percent red caps, distinguishing them from 324 and 329, which had 100 percent red caps. Those are generally the only differences between those two sets of ordinances. So looking at 412, 412 is barred under De Anza, because it's the same provision that 381 had in it when it was enacted in 1998. Describe the significance of the San Jose decision. You think that there's some... defensive collateral estoppel that applies here? Well, I think the same arguments have been raised by MHC in this case as were raised in San Jose. The same arguments were rejected by this court in San Jose with respect to the statute of limitations and ripeness assertions. I think there's likely a difference in application to facts given the enactment dates of those ordinances, so it's not a perfect fit. In addition, I think San Jose is important when you look at the substantive... the impact of Lingle. And I'd like to address that for a moment, because Lingle hadn't been decided when the Court of Appeal entered its order granting the motion for summary judgment. But MHC did move for reconsideration. That was denied by the Court after Lingle had been decided. Lingle didn't change the law as applied by the Court in this situation. The Court never reached the merits of their substantive due process Fifth Amendment claim. In addition, they now claim it kind of resurrected a substantive due process claim separate from a Fifth Amendment claim, which to me is disingenuous, because they pled a substantive due process claim in the end of the Fifth Amendment. In the underlying complaint, the Court addressed that claim as well. It was barred by the same one-year statute of limitations. So the claim was raised. The Court also goes on to suggest what its ruling may have been, and if it got to the merits of that claim. The Ninth Circuit has dealt with the merits of those substantive due process claims in these contexts before. I think that reasoning, the Ventura case, is similar to the analogy here. So in central that the takings claim, it's your position that the takings claim is remains on right under Williamson County? Well, the question is, I'm sorry, I can express it this way. The question is whether Lingle overturned armaduras, and I don't think it did. What Justice Kennedy says in his concurring opinion is that he still recognizes that there is a substantive due process claim that may arise separate and apart from a Fifth Amendment claim. But what armaduras says is if you have a claim under one of the amendments, you don't have to go to the generality of substantive due process. So this claim that they're making still falls within the bailiwick of a Fifth Amendment claim, whether they want to couch it as an Akins claim or Penn Central or Loretta, it's all a Fifth Amendment claim. The Fifth Amendment addresses this injury that they're talking about, so you won't drift to a substantive due process. And the result of that is what, that they have to go back and ask for an increase? Excuse me? So what's the import of that? Going back and asking for an increase would deal with the as-applied challenge, which I think is the rightness element that's missing under Williamson. And so you would go on to exhaust your administrative remedies, essentially, by going back and asking for the rent increase. This ordinance did include provisions for rent adjustments, a special rent adjustment, an NOI adjustment. The provision that the State court found to be chilling was the attorney fee provision, which it struck from the ordinance in its 2003 ruling. That portion of the ruling was not appealed by my client, so that portion of the ruling went into effect at that time. MHC then challenged the severability of those claims on appeal, and the court found, in fact, those provisions were severable and didn't undermine the effect of 412. So, yes, on an as-applied basis, as the district court properly found, they didn't satisfy the rightness requirements under Williamson. Presumably, they would argue that they may make some argument about futility. What, and again in San Jose, the fact that the inadequacy, that the remedy allowed, potential remedy allowed, was still inadequate, as ultimately doesn't excuse the party from proceeding in the administrative process with the claim. Is that correct? Correct. And under that, there is a Ninth Circuit case, which is Kinsey, which is not cited in the briefs, at 818 F. 2nd, 1449, which is cited in your San Jose opinion, dealing with this idea that you at least have to make one application before you claim futility, etc. And that has not occurred here. I can speculate as to why, but it's not in the record. They didn't pursue it. In addition, you have the element, the second element under Williamson, that they needed to pursue a state court remedy for compensation. I think if you look at the record, it's clear they never did that. They never brought a takings claim on the state court level. In fact, their sole claim that they were able to prevail on was a procedural issue unique and under California Election Code law. So that was a procedural issue. The compensation that was awarded as part of those ordinances being void was reversed as part of the court's decision, finding that 412 was a validly adopted, retroactive, curative ordinance. So I believe that deals with my points. I'm happy to answer any questions if you have any. Thank you, Mr. Copeland. Thank you. Mr. Bradford, you get the last word. Thank you very much. Footnote 14 of San Jose indicated that Lingle only foreclosed a substantially advanced claim. It did not deal with a substantive due process or Penn Central taking claim. The issue did not even arise until after oral argument and then by way of letter to the court related to the substantially advanced claim. San Jose was based upon res judicata, an argument that is wholly inapplicable here. And again, the exhaustion issue is relevant only to an as-applied taking claim, not to a substantive due process claim. And while there may be a requirement for exhaustion that one make a single application, here we have a specific finding that MHC was chilled from making that application. And the city continued to enforce those chilling provisions through December of 2005 through most of the pendency of this action and certainly during the time of the dismissal. So Williamson County makes clear that if there is not an adequate or reasonably certain State court remedy, then there is no need to pursue that remedy at all because the doctrine of futility applies. That determination by the State court of a chilling preclusion of the ability even to apply is entitled to collateral estoppel effect in this Court. 412 is the only valid law per the State court opinion, and it's acknowledged we sued within one year of 412. We could not have brought a substantive due process claim effectively before that. If you read our pleadings, it said we assert the substantive due process claim in the event that the Supreme Court ever overrules the Ninth Circuit because there was a conflict among the circuits and permits a substantive due process claim to go forward, we assert it in the alternative. That was prophetic because it happened. But that was the first time we ever had the possibility of going forward. And Lingle makes very clear that these are two wholly distinct claims, that there is no remedy of compensation for a substantive due process claim, and that, in fact, compensation cannot justify a substantive due process violation. I would also note that the very factors which caused this Court in both the Hall case to find a physical taking and then in Cashman v. Cattati to find a regulatory taking remain present in these particular ordinances. We have never had a day in court, principally because the city has changed which law, if contended, was applicable throughout the course of this litigation. We continuously tried to sue on whatever they then said was the law, and then we'd get a different determination as to what the appropriate State law was. And similarly, the Federal constitutional landscape changed through this case. One undeniable fact exists. Since 1998, for close to nine years now, my client has been in Federal court, either as an acknowledged member of an association or suing in its own name, simply asking to be heard on the Federal constitutional merits of this claim. It cannot possibly have come to court too late, nor could it have come to court too early, when it has been suing continuously for nine years to try to have that day in court. And all that's happened in the interim is we've had State court findings that certain of these laws were null and void, they were imposed inappropriately, and that's another Federal constitutional issue. A State court finding that we're now going to have a retroactive application of a law, and a State court finding that we've been chilled and precluded during all this time through 2005 from seeking a discretionary rent increase. There is literally nothing more my client could have done to be heard on the merits, and the claims do in fact have merit, as has been recognized repeatedly by this Court in the context of Hall and in the context of Cashman. So I urge Your Honors to remand so that at least there can be a determination on the merits of these claims. Thank you very much. Roberts. Thank you, Mr. Bradford. Mr. Gilpin, thank you as well. The case just argued as submitted will stand at recess for this session. Blanca, thank you for your help this week.
judges: T.G. Nelson, Silverman , Leighton